UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID TYLER HILL,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>WARDEN PHILLIP VALDEZ,<br><br>　　　　　　Respondent. | Case No. 1:09-cv-00601-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

Earlier in this habeas corpus action, a number of Petitioner's habeas corpus claims were dismissed when Respondent's Motion for Partial Summary Dismissal (Dkt. 27) was granted in part. (Dkt. 31.) As a result, Petitioner is proceeding on the merits of Claims 2(a) and 3(b) only. (Dkt. 3.) He challenges his conviction by guilty plea for the felony crime of sexual abuse of a child under the age of sixteen years, arising from criminal proceedings in the Fourth Judicial District Court in Ada County, Idaho. Respondent has filed an Answer (Dkt. 34), and Petitioner has filed a Traverse. (Dkt. 35.) Accordingly, the remaining claims in the Petition are ripe for adjudication. In addition, several other motions filed by the parties are pending.

Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 9, 10.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P.

**MEMORANDUM DECISION AND ORDER - 1**

73. Having reviewed the record in this case, including the state court record, and having considered the arguments of the parties, the Court enters the following Order denying and dismissing the Petition for Writ of Habeas Corpus.

## PRELIMINARY MOTIONS

Respondent filed a Motion for Extension of Time to File an Answer, citing an unusually heavy workload as the reason for the delay. (Dkt. 33.) Good cause appearing, the Answer (Dkt. 34) is considered timely.

Petitioner also filed a Motion to Expedite Habeas Corpus Proceedings. (Dkt. 38.) Petitioner's case is being heard in due course, in the order in which it was received. To the extent that the Court has fully considered the Petition for Writ of Habeas Corpus, the Motion to Expedite is now moot.

## PETITION FOR WRIT OF HABEAS CORPUS

### 1.    Background

Petitioner, then a 23-year-old man, was indicted on one count of lewd conduct with a minor under the age of 16, arising from an incident of sexual intercourse with a family friend, a young woman of 14. (State's Lodging A-4, p. 2.) At and before sentencing, Petitioner alleged that the young woman consented to intercourse, but admitted that he should not have "taken advantage" of her; however, he contested the allegations that the sexual contact was under circumstances of threat or physical force.[1] (State's Lodging A-

---

[1] In Idaho, consent is not a defense to sexual crimes against children. *See State v. Palin*, 675 P.2d 49, 51 (Idaho 1983) (consent is not a defense to the crime of statutory rape); *State v. Oar*, 924 P.2d 599,

**MEMORANDUM DECISION AND ORDER - 2**

5.) Contrarily, on post-conviction review, Petitioner asserted that he expressed his

complete innocence to his counsel from the beginning.(State's Lodgings C-1 and C-2, pp.

30-32.)

Based on the advice of his attorney, Ronald Christian, Petitioner entered into a

plea agreement and pleaded guilty to a lesser charge of sexual abuse of a child under the

age of sixteen. (State's Lodging A-1, pp. 47-55.) Petitioner received a sentence of ten

years fixed, with five years indeterminate. (*Id*., pp. 76-78.)

Claim 2(a) is that Petitioner's trial counsel, Ronald Christian, was ineffective

because he coerced Petitioner into pleading guilty. Claim 3(b) is that Petitioner's counsel

on direct appeal, Heather Carlson, was ineffective for failing to raise a claim that the

guilty plea was coerced as a result of Mr. Christian's actions.

**2.     Standard of Law Governing Habeas Corpus Relief, State Court Factual
        Determinations, and Ineffective Assistance of Counsel Claims**

Federal habeas corpus relief is available to a petitioner held in state custody only

where he can demonstrate that his custody "is in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254(a). If a petitioner contests a state court

judgment that adjudicated the merits of his claims, the petitioner cannot obtain federal

habeas corpus relief unless he shows that the state court judgment was either: (1)

"contrary to, or involved an unreasonable application of, clearly established Federal law,

_____

603 (Idaho 1996) (consent is not a defense to sexual battery of a minor). In addition, threat or force is not
a required element of the crimes of lewd conduct or sexual abuse of a child under age sixteen. *See* I.C.
§§ 18-1508, 18-1506.

**MEMORANDUM DECISION AND ORDER - 3**

as determined by the Supreme Court of the United States; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

The record reflects that Petitioner's claims were summarily dismissed by the Idaho Court of Appeals on grounds of insufficiency of evidence to support the claims, which is an adjudication of the claims on the merits. Petitioner contests both the factual basis and the legal basis of the Idaho Court of Appeals's opinion.

As a result, the Court first determines whether the state court decision was based on an unreasonable determination of the facts under § 2254(d)(2). If the factual determination was unreasonable, then the Court is not limited by § 2254(d)(1), but proceeds to a de novo review of the claims, which may include consideration of evidence outside the state court record. *See Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010). *See also Jones v. Walker*, 540 F.3d 1277 (11th Cir. 2008) (*en banc*).[2]

---

[2] The *Jones* Court reasoned:

> [W]hen a state court's adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.... Because the Georgia Supreme Court unreasonably determined the facts relevant to Jones' Sixth Amendment claim, we do not owe the state court's findings deference under AEDPA. We therefore apply the pre-AEDPA de novo standard of review to Jones' habeas claims. "

540 F.3d at 1288 n.5 (quotations, citations, and alterations omitted).

**MEMORANDUM DECISION AND ORDER - 4**

If the factual determination was reasonable, then the Court examines the legal basis of the state court decision under the limitations of § 2254(d)(1) and confined to the evidence contained in the state court record. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.") (footnote omitted); *Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("[W]e have made clear that whether a state courts decision was unreasonable must be assessed in light of the record the court had before it.") (citations omitted).

To contest a state court decision under § 2254(d)(2), the petitioner must show that the state court decision was based upon a factual determination that was "unreasonable in light of the evidence presented in the State court proceeding." *Id*. The United States Supreme Court has admonished that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010) (citations omitted).

The United States Court of Appeals for the Ninth Circuit has identified four types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the

---

fact-finding process itself is defective"; or (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Taylor v. Maddox*, 366 F.3d. 992, 1000-01 (9th Cir. 2004).[3]

Whether the determination of fact was unreasonable must be decided in the context of the proper legal standard. The United States Supreme Court has held that the validity of a guilty plea turns on "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held that a plea is not knowing and voluntary if it was the result of defense counsel's advice amounting to ineffective assistance of counsel. *Id*. at 59.

In addition, a voluntary plea must be free from either "physical or psychological coercion." *Henderson v. Morgan*, 426 U.S. 637, 653 (1976). The United States Supreme Court has noted that "there is no *per se* rule against encouraging guilty pleas." *Corbitt v.*

---

[3] The United States Supreme Court has yet to decide "whether, in order to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Wood v. Allen*, 130 S.Ct. 841, 848 (2010). Rather, the United States Supreme Court first applies the "unreasonable" test of § 2254(d)(2), and, if it concludes that the state court decision is not an unreasonable determination of the facts based on the state court record, it does not reach the question of whether the higher standard of § 2254(e)(1) applies. *See Wood*, 1130 S.Ct. at 849. The United States Court of Appeals for the Ninth Circuit, on the other hand, *has* resolved the conflict presented by these two sections–it applies *only* § 2254(d)(2) if the review is based upon the same factual record that was before the state courts ("intrinsic review"), while it applies § 2254(e)(1) to factual challenges that involve evidence presented for the first time in federal court ("extrinsic evidence"). *Taylor*, 366 F.3d at 999–1000.

**MEMORANDUM DECISION AND ORDER - 6**

*New Jersey*, 439 U.S. 212, 218-19 (1978).

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established that, to succeed on an ineffective assistance claim, a petitioner must show: (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

The second prong, prejudice, means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694. A defendant challenging a guilty plea must also show there is a reasonable probability that he would not have pleaded guilty but for counsel's erroneous advice. *Hill v. Lockhart*, 474 U.S. at 59.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may

consider either prong of the *Strickland* test first, or it may address both prongs, even if

one is deficient and will compel denial. *Id.*

**3.      Discussion of Claim 2(b)**

Claim 2(a) is that Petitioner's trial counsel, Ronald Christian, was ineffective

because he coerced Petitioner into pleading guilty.

**A.      *State Court Decision***

On July 6, 2009, the Idaho Court of Appeals issued its opinion rejecting

Petitioner's claim that his counsel coerced him to plead guilty, for the reason that the

claim was "conclusory, unsupported by admissible evidence, and belied by the record."

(State's Lodging D-4, pp. 4-5.) The Idaho Court of Appeals reasoned:

> [Petitioner] Hill's primary argument in support of his claim of an
> invalid guilty plea is that his attorney coerced him into pleading guilty. To
> support his argument, Hill notes that he originally answered two questions
> on the guilty plea form affirmatively. However, Hill's affirmative answers
> were explored by the district court, and Hill explained them without any
> reference to coercion.

(*Id.*, p. 7.) The Idaho Court of Appeals then quoted from the guilty plea colloquy, which

is set forth at length in the next section.

**B.      *State Court Record***

While the Idaho Court of Appeals singled out the guilty plea colloquy as grounds

to reject Petitioner's claim, the state court record reflects that both the original criminal

record and the post-conviction record were submitted to the Idaho Court of Appeals for

review. (*See* State's Lodging C-1, pp. 235-37.) The following information and items

**MEMORANDUM DECISION AND ORDER - 8**

found in the state court record are particularly relevant to Petitioner's claims:

April 5, 2005        At the pretrial conference, Judge Ronald J. Wilper, the prosecutor, and Petitioner's attorney had private discussions at the bench, outside of Petitioner's presence.[4] (C-1, p. 20.) Judge Wilper stated on the record that, at the pretrial conference, the parties informed the court that an offer was being discussed, with counteroffers; as a result, the pretrial conference was continued to April 8. (A-3, p. 3.)

Between April 5, and April 8, 2005, Petitioner's attorney spoke with Petitioner about a plea offer and suggested that Petitioner accept it. (Petitioner later alleged that he informed his attorney that he did not want to plead guilty. (C-1, p. 20.))

April 8, 2005        Mr. Christian and Petitioner spent one hour together before the hearing discussing whether Petitioner should plead guilty. The plea agreement offer was to reduce the charge from lewd conduct to sexual abuse, with the State to recommend a sentence of two years fixed with eight years indeterminate.

Petitioner completed the guilty plea form, which showed that two of his answers would not support a guilty plea: "Do you have any questions about whether or not you should plead guilty?" Answer: "Yes." "Do you feel like anyone, including your attorney, has pressured you into pleading guilty?" Answer: "Yes." (A-1, pp. 51-52.)

The change of plea hearing did not begin until one hour past its scheduled start time. Judge Wilper said to Petitioner: "You seem to be pretty upset. Do you feel okay, ready to go forward?" to which Petitioner answered, "Yeah." After having the terms of the plea agreement stated in open court by counsel, Judge Wilper informed Petitioner that the maximum potential punishment for the original lewd conduct charge was life in prison, and the maximum

---

[4] Later, on post-conviction review, Petitioner alleged that, during the pretrial conference bench discussion among the judge and counsel, the three of them "secretly plotted what to do with me and my case." (C-1, p. 20.) Petitioner later alleged in his post-conviction filing: "This meeting, I argue, is suspect especially since what immediately followed from this event, procedurally speaking, was the hour-long conference I had with my counsel, followed by my coerced guilty plea." (C-1, p. 27.)

**MEMORANDUM DECISION AND ORDER - 9**

punishment for the sexual abuse charge to which Petitioner was pleading guilty is 15 years in prison. (A-3, pp. 5-6.) Petitioner stated that he understood and agreed with the plea agreement, that he understood the court was not bound by it, and that he could be sentenced to up to 15 years in prison. (A-3, pp.9-10.) The court probed Petitioner's history of depression and anxiety. Petitioner stated that he had been taking his medications in jail. Petitioner answered "Yes" to the question, "Do you feel like you are able to understand these proceedings today?" (*Id.*, pp. 11-12.)

The following colloquy took place at the plea hearing:

Court:      Now, Mr. Hill, is this plea agreement acceptable to you?

Defendant:  Yes.

Court:      Do you understand that you are not required to accept this plea agreement?

Defendant:  Yeah.

Court:      Okay. Are you pleading guilty because you believe you are guilty?

Defendant:  Yeah.

Court:      Now, Mr. Hill, as you sit here today do you have any questions about whether or not you should plead guilty?

Defendant:  No.

Court:      You had answered the question affirmatively originally. You had said yes, you do have questions.

Defendant:  Oh, I might have. I told my dad and my mom that I would talk to them first before I accepted anything, but I think

**MEMORANDUM DECISION AND ORDER - 10**

they understand.

Court:       Now, do you feel that anyone, including your attorney, has pressured you into pleading guilty?

Defendant:   No.

Court:       You said yes to that question as well. Are you changing your answer to no?

Defendant:   Yeah, sorry. I didn't mean to mark that.

Court:       Okay, I'll make a note on it. I've reviewed the rest of your answers on the guilty plea form. Do you still want to plead guilty?

Defendant:   Yeah. (A-3, p. 12; D-4, pp. 7-8; the guilty plea form" with Judge Wilper's notes made during the change of plea hearing, is found in the record at State's Lodging A-1, pp. 49-52.)

At the same hearing, Petitioner gave the following testimony about commission of the crime:

Court:       It looks like, according to this Information, you had this sexual contact with [L.T.] just a couple of days after your 23rd birthday. Is that right?

Defendant:   Yeah.

Court:       And where were you when that occurred? Were you here in Boise?

Defendant:   Yeah.

Court:       Whereabouts?

Defendant:   At her place.

Court:       All right. Now it says you had genital-to-genital

**MEMORANDUM DECISION AND ORDER - 11**

> contact. You know what that means obviously. Right?

Defendant:     Right, yes.

Court:          Did you have sexual intercourse with her?

Defendant:     Yes.

Court:          Well, that fulfills a factual basis for the guilty plea, then. Now, after all this questioning, do you still want to go forward with your guilty plea?

Defendant.     Yes, Your Honor.

Court:          Mr. Hill, do you understand that once I accept your guilty plea, you can't back out just because you don't like the sentence that you get. Do you understand?

Defendant:     Yes.

The court accepted the guilty plea, and ordered a presentence investigation report and psychosexual evaluation. (A-1, pp. 14-17.)

May 5, 2005          Petitioner wrote in his presentence investigation questionnaire: "I should have known she was too young to engage in sex. I honestly felt terrible for taking advantage of her." (A-4, p. 3.) He gave a detailed description of the incident. (*Id.*)

July 26, 2005        During the psychosexual evaluation conducted by John W. Morgan, Ed.D, Petitioner described how, before the incident with the victim, he would "hit on her" and "talk about sex," and that he found out she was on birth control. (A-5, p. 91.) He admitted that he "had sex with her." (*Id.*) He gave a detailed description of the incident. (*Id.*)

August 17, 2005      Petitioner wrote a letter to the judge for sentencing purposes: "Your Honor, I am guilty as charged. I did take advantage of [L.T.] who was only 14 & nobody knows how sorry I am & wish it never occurred yet, I'm not guilty to all the allegations as to how some say it happened." (A-5, p. 110.)

**MEMORANDUM DECISION AND ORDER - 12**

Sept. 26, 2005          Petitioner wrote a letter that is in his pretrial investigation file:

Finally, I beg the court to please honor the plea agreement even though it's not binding. I don't know if you remember the day I plead guilty clear back in April but if you recall, I delayed the court for quite some time because it was so difficult for me to know that I'd be right here before you trying desperately to convince you of the truth while also trying not to make you angry. When I plead guilty I was bawling like a baby because everything was hitting me at once. I'm not an incorrigible person & I'm serious when I tell you I'm dedicated to sobriety and & rehabilitation. I know the I.D.O.C. won't release me unless they are confident I'm ready for release & have served a just punishment. (A-5, p. 109.)

October 7, 2005          At his sentencing, Petitioner gave the following testimony orally in allocution:

I've already come to terms with prison, and how long I'm going to be there. Facing the parole board, I mean I've already come to terms that my release is long, long in the future. I'm all right with that.

It's just so hard that all my family, all the shame that I brought on them, all the pain that I brought on others. And then the truth not being there. Who is going to believe me, coming in here?

I'm not going to ask you to believe my side of the story. It probably makes you livid that I'm not coming in here, and think that I'm trying to insult your intelligence by saying, "There was no force here. There was no force here."

But I mean, that's the truth. I feel horrible. Every day I cry about it. At night, when I go to bed, I wish [L.T.] were here so I could apologize directly to her.

I just understand that I should be punished for what I did, but not what I didn't do. (A-6, pp. 63-64.)

October 5, 2007          Petitioner filed a post-conviction action with the following allegations: "(1) counsel made numerous statements that led the petitioner to believe that the sentencing judge would follow any

**MEMORANDUM DECISION AND ORDER - 13**

recommendations made, thus promising the petitioner a particular sentence; (2) counsel misinformed petitioner that the rape allegation made but not charged couldn't be used against him since he would not be pleading guilty to any such charge, which meant petitioner would be unknowingly forfeiting constitutional rights to confront accusers and the right not to be sentenced on a crime not charged or convicted of; (3) counsel informed petitioner, moments before guilty plea, that he was unprepared and extremely reluctant to go to trial; (4) counsel repeatedly told petitioner that he would be convicted at trial and that he needed to plead guilty in order to avoid a harsh sentence; (5) counsel told petitioner he could not continue representation if counsel's advice wasn't heeded; (6) counsel would not end conference, (which immediately preceded guilty plea) until petitioner agreed to plead guilty; (7) petitioner's counsel was so deficient in state law that it prejudiced petitioner from receiving a lesser sentence; (8) counsel falsely informed petitioner that he could not withdraw his guilty plea no matter what the circumstances were and threatened petitioner that even attempting to would only aggravate the judge, rendering a harsher sentence."[5] (C-1, pp. 7-8, numbering added.)

Regarding the guilty plea questionnaire, Petitioner's sworn affidavit in support of his post-conviction action stated:

I gave affirmations to two particular questions about whether I should plead guilty or not and the other asked if I felt people, including my attorney, were pressuring me into pleading guilty. I threw these two obvious red flags in desperation and believed the judge would get the hint. In my disturbed state I thought maybe he would order the courtroom cleared and ask me what was going on. I'm not a psychologist but I know people do irrational and not-so-intelligent things when they are consumed with emotional grief. So in my distraught state I didn't press it further or call my lawyer out in open court when the judge questioned me about the two boxes as my lawyer glared at me no more than two feet away.

---

[5] Petitioner's allegations that suggest Mr. Christian was publically reprimanded by the Idaho State Bar were unfounded, and, thus, stricken from the record by the state district court. (State's Lodging C-2, p.32.)

**MEMORANDUM DECISION AND ORDER - 14**

(State's Lodging C-1, p. 22.)

### C. *Review of Idaho Court of Appeals's Factual Determination*

To show the Idaho Court of Appeals's factual determination was unreasonable on federal habeas corpus review, Petitioner must demonstrate that one of the following errors is present: (1) the state court failed to make a finding of fact; (2) the court mistakenly made factual findings under the wrong legal standard; (3) "the fact-finding process itself [was] defective"; or (4) the state court "plainly misapprehend[ed] or misstate[d] the record in making the[] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim." *Taylor v. Maddox*, 366 F.3d. at 1000-01. While Petitioner asserts that all four types of fact-finding error were committed by the Idaho Court of Appeals, he provides no detailed argument how the type (2) error fits his case–that the court mistakenly made factual findings under the wrong legal standard–because no fact-finding was made in his case. Neither does it seem that the Court of Appeals plainly misapprehended or misstated the record in making the factual findings–a type (4) error–because, again, no factual findings were made.

Rather, the more relevant questions are whether Judge Wilper and the Idaho Court of Appeals made a type (1) error–that the state court failed to make a finding of fact; or a type (3) error–that the fact-finding process itself was defective, because no factual findings were made.

Petitioner argues that his affidavit, his guilty plea form, court minutes, and a

**MEMORANDUM DECISION AND ORDER - 15**

transcript of the guilty plea hearing were sufficient and admissible forms of evidence submitted with his post-conviction application. (Dkt. 35-1, pp. 6-7; State's Lodging D-4, pp. 3.) Petitioner also argues that the Court of Appeals considered *only* his testimony at the plea colloquy, and not the remainder of the record.

There is no indication in the record that the Court of Appeals did not consider the entire record, even though it chose to focus on the two items mentioned in the opinion, the guilty plea questionnaire and the change-of-plea colloquy. The foundational difficulty with Petitioner's argument is that, when the entire record is considered, the "facts" proffered by Petitioner are self-contradicting. The law is well-settled that a party may not contradict himself to create a question of fact. *See Kennedy v. Allied Mutual*, 952 F.2d 262, 266 (9th Cir. 1991).

Before sentencing, Petitioner led the trial court to believe that the one-hour conference with his counsel and his crying episode were due to Petitioner *being overwhelmed by his circumstances and prospects for the future*, and that his statement on the guilty plea form that he felt like his attorney pressured him into pleading guilty was due to *a mistake*. Also before sentencing, Petitioner admitted to the court, to the presentence investigator, and to the psychosexual evaluator that he had sexual intercourse with L.T. on the date in question, but he asserted that it was consensual.

However, two years later, in his post-conviction application, Petitioner stated that his one-hour conference with his counsel and his crying episode were due to *the severe*

**MEMORANDUM DECISION AND ORDER - 16**

*coercion of his attorney*; that checking the box indicating that he was "pressured into pleading guilty" on the guilty plea form was *not a mistake, but a disguised cry for help*; and that, furthermore, Petitioner *did not have sex with L.T. at all*,[6] but had wanted to proceed to trial all along, notwithstanding the risk of being sentenced to life in prison for the greater charged crime.

Speaking to instances where convicted felons challenge their guilty pleas after receiving sentences harsher than they anticipated, the United States Supreme Court has warned:

---

[6] During the post-conviction oral argument, the following questioning occurred:

| The Court: | Okay. Your basic contention is that Mr. Hill did not engage in sex with a 14-year-old. He swore under oath that he did because his attorney told him to, and it's as simple as that. Right? |
|---|---|
| Petitioner's counsel: | That's correct Your Honor. He told him the only way he would get this deal is if – and it was a good deal. The state was doing a good job making a deal that would be best for all the parties. He told him the only way he could get the deal is to make some admissions, and so he did. |
| The Court: | Are you contending that his attorney called him to the stand and had him sworn and testified under oath that his lawyer supported perjury? |
| Petitioner's counsel: | I don't know if I could go that far. What I do know is that he was told by his lawyer to say that he did it. he was told, as he tells me, that he took the language right out of the PSI which was drafted with his attorney. He took the language right out of there and put it in his 14-page letter which he attached and sent to the court. So I believe his attorney was involved in the development of the language on the PSI, which I don't have any problem with–I do that all the time–and also what was in the letter. How much of that was him saying, "Write it or else" or what Mr. Hill's thinking was, I can't say. |

(State's Lodging C-2, pp. 30-32.)

**MEMORANDUM DECISION AND ORDER - 17**

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner argues that, in the same opinion, the Supreme Court also noted an exception to the above rule:

> Although the plea or sentencing proceeding record constitutes a formidable barrier to a collateral attack on a guilty plea, that barrier is not insurmountable, and in administering the writ of habeas corpus federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time of his guilty plea were so much the product of such factors as misunderstanding, duress, or misrepresentation as to make that plea a constitutionally inadequate basis for imprisonment.

431 U.S. at 64.

*Blackledge v. Allison* and Petitioner's case share some similarities. In *Blackledge v. Allison*, after being sentenced to 17 to 21 years in prison, the defendant claimed that his guilty plea had been induced by the promise of his attorney–who presumably had consulted with the judge and Solicitor–that the defendant would be sentenced to only 10 years in prison. The defendant also stated that, although he had denied that any promises had been made to him in response to the judge's questioning in open court, he did so based on his lawyer's instruction on how to answer the questions so that the court would accept the guilty plea.

**MEMORANDUM DECISION AND ORDER - 18**

Another similarity between the two cases is that both defendants gave fairly detailed descriptions of what the lawyers allegedly said to them (in *Blackledge v. Allison* it was alleged that the lawyer promised a particular sentence, and in this case it is alleged that the lawyer coerced the guilty plea).

Key differences between the cases are these. In *Blackledge v. Allison*, there was no transcript of the plea proceeding. Rather than having the defendant complete a guilty plea form before the hearing, the court simply asked him those questions in court, and the clerk filled out the questionnaire according to the defendant's answers. 431 U.S. at 65. The court asked the defendant whether he understood that he could be imprisoned for a minimum of 10 years to a maximum of life and whether anyone had made promises or threats to influence him to plead guilty. 431 U.S. at 66-67. Without further questioning, the judge accepted the plea. *Id*. There was also no transcript of the sentencing hearing, held at a later date, where the defendant received a sentence well beyond 10 years. *Id*.

Petitioner's case is quite different: *extensive* transcripts exist from both the change-of-plea hearing and the sentencing hearing. In addition, Petitioner spoke to a presentence investigator and a psychosexual evaluator, who both made written reports, and Petitioner himself wrote two extensive letters to Judge Wilper. In other words, Petitioner had many, many opportunities to tell the truth during his court proceedings, and it was presumed that he did so, until his shocking revelations two years after the fact.

Another key difference is that, after he received a harsher sentence than he

**MEMORANDUM DECISION AND ORDER - 19**

expected, Petitioner not only changed his testimony about *why* he pleaded guilty (like the *Blackledge v. Allison* defendant), he *also* changed his entire testimony about whether he committed the crime. These differences provided the Idaho Court of Appeals with far more instances of Petitioner's admissions to consider than the reviewing court had available to it in *Blackledge v. Allison*. The differences provide sufficient factual basis upon which Petitioner's claims could be rejected as self-contradictory or incredible, or, as the Court of Appeals termed it, as not needing additional factual development because they were "belied by the record."

In summary, the record contains no less than six different instances where Petitioner had the opportunity to come forward with the information that his guilty plea was coerced and that he was actually innocent of the lewd conduct charge, but, instead, he chose to say that it was his choice to plead guilty; that he, in fact, committed the charged act; and that he was extremely sorry for having committed the act. Those six instances include: (1) the change-of-plea hearing, (2) the interview with the pre-sentence investigator, (3) the interview with the psychosexual evaluator, (4) his first letter to Judge Wilper before sentencing, (5) his second letter to Judge Wilper before sentencing, and (6) when he was asked at sentencing whether there was any reason the sentencing should not go forward, and during his oral allocution at sentencing.

Under similar circumstances, in *Perez v. Rosario*, the United States Court of Appeals for the Ninth Circuit determined:

**MEMORANDUM DECISION AND ORDER - 20**

> [S]tate court fact determinations are reasonable without an evidentiary hearing, as here, where the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility. Where there is no likelihood that an evidentiary hearing would have affected the determination of the state court, its failure to hold one does not make such determination unreasonable.

459 F.3d 943, 951 (9th Cir. 2006) (citation omitted). Here, the Idaho Court of Appeals' opinion is the equivalent of a factual determination that Petitioner's post-conviction allegations are entirely without credibility when compared to the record in his criminal case.

In *Perez v. Rosario*, Mr. Perez came forward after sentencing with affidavits that contradicted each other and that contradicted other evidence in the record. Among the allegations were that two of Mr. Perez's attorneys at different stages of proceedings had ignored Mr. Perez's communications bringing to their attention that another person had confessed to shooting the victim, which could have exonerated Petitioner. *Id*. at 951. The Court of Appeals reasoned: "We must then either believe that both Perez's prior counsel and his new attorney were sublimely incompetent, and that Perez did nothing to protest, or we must inevitably conclude that Perez's account is not credible." *Id*. at 952.

In that case, some of the grounds for the factual determination of lack of credibility included that Mr. Perez's declarations "were made well after the events they purport to describe, and that they "describe rather outrageous conduct on the part of prior counsel, for the first time." *Id*. Factual and procedural discrepancies also contributed to the lack of credibility of Mr. Perez's affidavits. *Id*. at 952-53. Because of the combination of

**MEMORANDUM DECISION AND ORDER - 21**

problems with Mr. Perez's affidavits, the Ninth Circuit Court concluded, "We therefore confidently defer to the California court's finding, without evidentiary hearing, that Perez's account is incredible." *Id*. at 953.

As in *Perez*, here the record shows that Petitioner is attempting to change his entire testimony–he is not simply coming forward to report that he was victimized by his lawyer during a one-hour meeting. The differences in Petitioner's allegations before and after sentencing defy explanation. In the presentence report and the psychosexual evaluation, Petitioner several times describes in great detail the manner in which he "took advantage" of the victim. He now asserts that the entire detailed versions of the event were a false story that he, or, more incredibly, his lawyer, fabricated to support a guilty plea based only on the lawyer's desire to avoid trial because of lack of preparation. Likewise, on the one hand, Petitioner gave his "deepest and truest apologies" to the victim, the victim's father, and her family "for all that he did." (A-5, p. 99); on the other hand, he is now asserting that he had nothing to do with the crime. Similarly, he said that it gave him "great pangs of torment to imagine what [he has] put [his mother] and dad through" in one of his letters to the judge, but now he asserts that he did nothing wrong whatsoever and should not have been charged. (*Id*., p. 100.)

In addition, Petitioner wrote in his letter to Judge Wilper: "I knew my DNA would be found on the [victim's] shirt." (A-5, p. 102.) Contrarily, at the post-conviction hearing, Petitioner's counsel asserted it that it was not Petitioner's DNA at all, despite the fact that

**MEMORANDUM DECISION AND ORDER - 22**

the DNA test results matched Petitioner's prediction:

| | |
|---|---|
| Petitioner's counsel: | There is scientific evidence in this case. There's DNA evidence. The DNA evidence was never independently verified. [Mr. Christian] never called an independent lab to verify that evidence. It's very strange. If a client tells you that he is factually innocent and DNA evidence comes back that he is not, the first thing you do is you go out and you get independent evidence to verify. Then you have the conversation. |
| The Court: | You contend that he did tell his lawyer he was factually innocent? |
| Petitioner's counsel: | He did the entire time, Your Honor. |

(State's Lodging C-2, pp. 29-30.)

Finally, one of the reasons that Mr. Perez's affidavit in *Perez v. Rosario* was

considered incredible is that no one would have pleaded guilty to 14 years in prison if he

had access to a confession that someone else committed the crime. 459 F.3d at 952-53.

Likewise, Petitioner has no explanation for the fact that he agreed to plead guilty to up to

15 years in prison, instead of asserting his innocence and asking for a new lawyer if he

believed his lawyer was unprepared for trial.[7]

This Court concludes that it was not unreasonable for the state court to conclude

that the large number of internal contradictions and the many opportunities Petitioner had

---

[7] Further, Petitioner knew, prior to sentencing, that the state court was likely to sentence him to a lengthy prison sentence; in one of his letters he wrote: "Last Friday however, it was made quite clear that the court believed I was likely a violent-proned [sic] offender & that instead of a[n] opportunity of rehabilitation/ punishment, I might be deserving of a harsh label reserved for a few & imprisoned for a period well outside of the recommendation by the State." (*Id.*, p. 100.)

**MEMORANDUM DECISION AND ORDER - 23**

to correct the alleged extremely serious problems with his defense made his factual allegations incredible, conclusory, and unsupported by sufficient admissible evidence. *See Miles v. Martel*, 696 F.3d 889, 2012 WL 4490756 at *8 (9th Cir. 2012) (distinguishing the case from *Perez v. Rosario* for the reasons that "Miles has not submitted a declaration containing any internal or external inconsistencies, much less any obvious inconsistencies or contradictions."). Similarly, in *Blackledge v. Allison*, the Court explained that the defendant there should have been permitted to go forward because his "allegations, when viewed against the record of the plea hearing," were not so "palpably incredible," or "so patently frivolous or false," as to warrant summary dismissal. 431 U.S. at 76 (internal citations omitted).

Here, Petitioner's own words and actions in the record are self-contradictory or palpably incredible, and the record is otherwise devoid of anything that is *particularly* relevant to Petitioner's claim of a coerced confession, even though Petitioner cites to other items in the record that are *generally* "admissible." Petitioner did not provide any medical opinions that his mental or emotional state was so poor that he could not understand or intelligently participate in the change-of-plea discussion set forth above, or that he could not have corrected the problems in one of the interviews with the professionals. Nor does Petitioner give adequate reason why a 23-year-old person could not have mustered the courage and strength at any of his several hearings to ask the judge if he could speak to him outside the presence of his lawyer, rather than assuming that the

**MEMORANDUM DECISION AND ORDER - 24**

judge would "take a hint" from the past written form's answers in the face of Petitioner's clear, contrary, and contemporaneous verbal answers. This was not Petitioner's first brush with the law, having pleaded guilty in 2003 to an aggravated assault conviction involving an incident of sexual intercourse with an adult woman; thus, Petitioner was familiar with the seriousness and solemnity of court proceedings. (*See* State's Lodging A-6, pp. 26, 33.)

Based on the all of the foregoing, the Court concludes that it was not an unreasonable determination of fact for the state court to consider and reject the self-contradicting statements of Petitioner throughout the record and decline to permit him to develop the record any further on this claim. The state courts did not act unreasonably in declining to make findings of fact or call for more evidence, nor was the fact-finding process itself defective, simply because no factual findings were made, under the particular circumstances of this case.

### D.  *Standard of Law Governing Review of State Court Legal Determinations*

Because the Court has determined that the factual determination of the Idaho Court of Appeals was not unreasonable, the Court next considers the legal sufficiency of the state court opinion, including application of the law to the facts, which is an analysis governed by § 2254(d)(1). That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test. Under the first test, for a decision to be "contrary to" clearly established federal law, the petitioner must show that the state court applied "a rule of law different from the governing law set forth in United States Supreme

**MEMORANDUM DECISION AND ORDER - 25**

Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under *Hill v. Lockhart* and *Strickland v. Washington*, to prevail on his claim, Petitioner must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that Petitioner was prejudiced by the deficient performance, in particular, that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. This standard, which gives deference to counsel's decisionmaking, is the de novo standard of review.

As noted above, another layer of deference–to the state court decision–is afforded on federal habeas corpus review. In giving guidance to district courts reviewing

**MEMORANDUM DECISION AND ORDER - 26**

*Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

### E.  *Review of Idaho Court of Appeals's Legal Determinations*

As noted above, the Idaho Court of Appeals issued its opinion rejecting

Petitioner's claim that his counsel coerced him to plead guilty as "conclusory,

unsupported by admissible evidence, and belied by the record." (State's Lodging D-4, pp.

4-5.) Petitioner argues that his claim was *not* conclusory, because he provided factual

support detailing when his counsel coerced him and what his counsel said, as well as

evidence that Judge Wilper noted Petitioner was very upset. The Idaho Court of Appeals

characterized Petitioner's claim as "unsupported by admissible evidence," but Petitioner

argues that his own testimony, presented by affidavit, was, in fact, admissible. However,

the Idaho Court of Appeals's obvious struggle in selecting an appropriate label for

Petitioner's contradictory statements is not dispositive of whether the opinion is

unreasonable. The three chosen descriptors were "conclusory, unsupported by admissible

evidence, and belied by the record" (State's Lodging D-4, pp. 4-5); the court could have

substituted "admissible but palpably incredible." In any event, when the entire record is

viewed as a whole, it is clear that Petitioner's contradictions on the issues of coercion and

actual innocence throughout the record are not enough to create an issue of fact on either

deficient performance or prejudice. While the trial transcripts, court minutes,  and guilty

plea form themselves could be admitted as evidence for some purposes, they do not

provide sufficient admissible evidence to support Petitioner's ineffective assistance of

counsel claim regarding whether the guilty plea was voluntary, rather than coerced.

   The record reflects that ample evidence (even accounting for minor contradictions

among the State's witnesses) existed to show that Petitioner committed the act forming

the basis of the claim, including testimony and DNA evidence. Force was not an issue as

to the conviction, and, thus, Petitioner's focus that no force was involved is not relevant

to the conviction.

   As to the sentence, Petitioner's counsel advised him to accept a plea agreement

that reduced the total amount of incarceration time to which he was exposed from a life

sentence to 15 years. Even Petitioner's post-conviction counsel admitted that "it was a

good deal." (State's Lodging C-2, pp. 30-32.) Petitioner did not have a clean record, he

had in his recent past another similar sex crime (also with allegations of force, though

Petitioner adamantly contested the issues of force both then and in the present case), and

he was advised by the state district court that the court did not have to abide by the

**MEMORANDUM DECISION AND ORDER - 28**

sentencing recommendation. In fact, Petitioner was also advised by the state district court some time before the sentencing hearing that the court did *not* intend to follow the recommendation. (State's Lodging A-5, p. 100.)

Petitioner's outcries that his counsel bullied him into accepting the plea agreement despite Petitioner's actual innocence did not come until well after sentencing, thus adding to the sense that this is a case of buyer's remorse, rather than deficient performance of counsel. As in *Perez*, it is highly unlikely that an innocent man would simply agree to face up to 15 years in prison rather than speak up and reveal his lawyer's alleged grossly deficient performance before sentencing occurred. Because Petitioner's allegations are palpably incredible, neither deficient performance nor prejudice is shown on the facts before the Idaho Court of Appeals, and nothing in the record suggests that an evidentiary hearing would have shown otherwise.

Not only does Petitioner's claim fail under the de novo standard, it also most certainly fails under the "double deference" standard of *Harrington v. Richter*. That is, because reasonable jurists could disagree as to whether the Idaho Court of Appeals correctly determined that Petitioner's ineffective-assistance-of counsel-by-means-of-coercion claim was conclusory and unsupported by sufficient admissible evidence, habeas corpus relief under § 2254(d)(1) is not warranted.

**MEMORANDUM DECISION AND ORDER - 29**

4.      **Discussion of Claim 3(b)**

Claim 3(b) is the companion appellate claim to the claim discussed above–that

Petitioner's direct appeal counsel, Heather Carlson, was ineffective by failing to present

(1) the issue that his trial counsel was ineffective for coercing him to plead guilty, or (2)

the bare issue that his guilty plea was coerced.[8] Because essentially the same factual

determination underlies this claim as the claim discussed above, the Court concludes that

Petitioner cannot prevail on an argument that the Idaho Court of Appeals's decision is an

unreasonable factual determination under § 2254(d)(2). The Court thus proceeds to

review the legal determination under § 2254(d)(1).

A.      *Standard of Law*

The *Strickland* principles also apply to determining ineffective assistance of

appellate counsel claims. To show prejudice on appeal, a petitioner must show that his

attorney failed to raise an issue obvious from the trial record that probably would have

resulted in reversal. *See Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a

petitioner does not show that an attorney's act or omission would have resulted in

reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not

---

[8] Petitioner attempts to make a distinction between a claim that his guilty plea was coerced, and that his guilty plea was coerced by counsel. However, because under Petitioner's facts, counsel is the primary factor allegedly causing the coercion, the underlying issue is always ineffective assistance of counsel (no other cause of the coercion was identified by Petitioner). *See Tollett v. Henderson*, 411 U.S. 258 (1973) (a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970)]." *Id.* at 267.

**MEMORANDUM DECISION AND ORDER - 30**

ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised. *See Miller*, 882 F.2d at 1435.

"Effective legal assistance" does not mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "[N]othing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable claim' suggested by a client." *Id.*, 463 U.S. at 754. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52.

### B.   *State Court Decision*

After reviewing the state court record, the Idaho Court of Appeals rejected Petitioner's appellate counsel claim:

> Not only are Hill's allegations regarding an invalid guilty plea conclusory, they are belied by the transcript from his change of plea hearing. Furthermore, this issue is not "clearly stronger" than the issues raised by Hill's attorney on direct appeal.

(State's Lodging D-4 p. 8.)

### C.   *Review of Idaho Court of Appeals's Legal Determinations*

As discussed above, Petitioner did not show that his trial counsel performed ineffectively at the guilty plea stage, nor did he show that his guilty plea was coerced. Because that claim had no merit, appellate counsel was not ineffective when she elected

**MEMORANDUM DECISION AND ORDER - 31**

to omit that claim from Petitioner's appeal, whether she might have brought it as an

ineffective assistance of trial counsel claim, or a claim that the guilty plea was invalid.

The Idaho Court of Appeals's decision on this claim is sound, and is not contrary to, or an

unreasonable application of, United States Supreme court case law governing claims of

ineffective assistance of appellate counsel. Hence, no federal habeas corpus relief is

warranted on this claim.

### 4.      Conclusion

Having reviewed the record and considered the arguments of the parties, the Court

concludes that Petitioner is not entitled to federal habeas corpus relief under 28 U.S.C.

§ 2254(d)(1) or (2). The Court has alternatively considered Respondent's argument that

Petitioner is not entitled to relief under a de novo review standard on either claim on the

record before this Court, and the Court agrees that Petitioner is not entitled to relief under

that standard, either. Accordingly, the entire Petition will be denied and dismissed with

prejudice.

### PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING

Based on the foregoing, the Court will deny Petitioner's Motion for an Evidentiary

Hearing in this federal habeas corpus action. (Dkt. 36.) Although Petitioner timely

requested an opportunity to present evidence in the state post-conviction proceedings, the

state district court was not unreasonable in denying the request based on the evidence

Petitioner presented with his petition.

**MEMORANDUM DECISION AND ORDER - 32**

As noted above, the state court record reflects that, after appointment of counsel for Petitioner and briefing on a motion for summary dismissal filed by the State, the district court held an oral argument, but declined to hold an evidentiary hearing, finding the allegations of the petition conclusory and unsupported by admissible evidence. (State's Lodging C-1, p. 233.) In this action, Petitioner wishes to call as witnesses his trial counsel, Ronald Christian, and his appellate counsel, Heather Carlson.

In *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), the United States Supreme Court clarified the law governing when habeas corpus petitioners can bring additional evidence into federal court to bolster their claims. Particularly, the Court explained: "If a claim has been adjudicated *on the merits* by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) *on the record that was before that state court*." *Id*. at 1400 (footnote omitted, emphasis added); *see also Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("[W]e have made clear that whether a state courts decision was unreasonable must be assessed in light of the record the court had before it.") (citations omitted). The *Pinholster* Court reiterated that "review under § 2254(d)(1) focuses on what a state court knew and did." 131 S.Ct. at 1399.

Here, based on the record before it, the state court did not find it necessary to hold a hearing to resolve Petitioner's claims. This Court agrees. Petitioner has not passed over the hurdle imposed by § 2254(d)(2) to show that the factual determination of the state courts was unreasonable based upon the record before the state courts. Therefore,

**MEMORANDUM DECISION AND ORDER - 33**

Petitioner's request is denied because it is without a proper basis in the law.

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*" Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a court has dismissed the petition or claim on the merits, the petitioner must show

**MEMORANDUM DECISION AND ORDER - 34**

that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed some of Petitioner's claims on procedural grounds, and some have been denied on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court **within thirty (30) days after entry of this Order**, and he may file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b)(2).

## ORDER

**IT IS ORDERED:**

1.      Petitioner's Petition (Dkt. 3) is DISMISSED with prejudice.

2.      Respondent's Request for Extension of Time to File Answer (Dkt. 33) is GRANTED.

**MEMORANDUM DECISION AND ORDER - 35**

3.     Petitioner's Motion to Expedite Habeas Corpus Proceeding (Dkt. 38) is

MOOT.

4.     Petitioner's Request for an Evidentiary Hearing (Dkt. 37) is DENIED.

5.     Petitioner's Motion or Petition for Mandatory Injunction (Dkt. 46) is

MOOT. Because all parties have consented to the jurisdiction of a United

States Magistrate Judge (Dkt. 10), this Court is functioning as the District

Court. Petitioner has provided no legitimate grounds to contest his earlier

consent to magistrate jurisdiction, and, in fact, also is requesting that this

Court be required to provide a speedier ruling in this case.

6.     The Court will not grant a certificate of appealability in this case. If

Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to

forward a copy of this Order, the record in this case, and Petitioner's notice

of appeal, to the United States Court of Appeals for the Ninth Circuit. The

Court now reviews the Petition to determine whether it is subject to

summary dismissal pursuant to 28 U.S.C. § 2243 or Rule 4 of the Rules

Governing Section 2254 Cases.



DATED:  **November 28, 2012**.

Honorable Larry M. Boyle
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 36**